Mr. Newton, happy to hear from you. Thank you. Good morning and may it please the court. This morning I will address three issues. First, the primary threshold issue upon which both the involuntary guilty plea claim and the ineffective assistance of counsel claim rest, which is whether the definition of interstate and foreign commerce and its exception in 18 U.S.C. section 921A.2 defines the phrase commerce and inter-affecting commerce in 18 U.S.C. 922G. There's also a subsidiary threshold issue, which is if so, whether the commercial movement of the rifle in this case from its manufacturer in a city in North Carolina to a wholesaler and then to a wholesale warehouse of a retailer and then back to the retailer in North Carolina. This is not presented to us in the course of a direct appeal or in the course of a sentencing hearing. It's a lateral attack upon a guilty plea and so the procedural posture of seeking to withdraw a guilty plea is very different from a direct appeal or the sentencing hearing itself. This question might be raised in another context, but it's raised in the specific context where you face a very high bar. Your Honor, I would ... We don't generally grant motions to withdraw guilty pleas unless ... except with the guilty plea proceeding itself. Something did go very basically wrong with the guilty plea proceeding. If the court agrees with my statutory ... Well, I'm not sure because your claims have varied all over the lot. Sometimes they seem to be ineffective assistance of counsel. Sometimes they seem to be egregious governmental misconduct. Sometimes they were raised here but not there and the rest. In other words, the focus of the case seems to be shifting a little bit. Well, part of that is because there was a pro se litigant in the court below and the question that the court granted a COA on was one issue and when I got appointed on the case, I saw there had been a separate issue that was preserved in an effective assistance of counsel claim and I moved the court and the court granted my motion to expand the COA. There is an ineffective assistance of counsel claim and there is an involuntary guilty plea claim. I'll make this really simple. Sorry, before you make it simple, I want to make it more complicated just for a second. In the petition itself, there was both an ineffective assistance claim which you were now briefing and there was a due process guilty plea claim but that was only based on ineffective assistance. Not entirely. It said I'm incorporating everything I said about ineffective assistance and that is my due process claim. He also moved to amend, he called it supplement but it was treated as a motion to amend and to his credit, he actually cites Rule 15 and says this relates back and he cites a Fourth Circuit decision, U.S. versus Mastrapa in which this court in discussing invalid factual basis says this bleeds into an involuntariness claim so construing his pleadings liberally as this court must, he did raise an independent due process. What is before us? Is it ineffective assistance of counsel before us? Yes. Both are before you under the amendments. What's that? Both the claims are before you based on the COA that was expanded. Let me explain however you want to view the claim why this is a lot simpler than may appear. Sorry. I really do just want to understand. You think there are two claims before us but I think this was the first thing you said and I really want to be clear about this. They both rest on the same underlying argument about the juristic and if just assuming hypothetically if the nexus argument doesn't pan out on the merits then both claims fail.  Okay. Correct. Let me tell you why it does. Okay. Let me tell you why this is simple. The statute says that and this assumes that the definition of interstate and foreign commerce defines the term commerce in 922G1 and the legislative history certainly indicates it does. I think just basic. Wait. What? The legislative history certainly indicates it does. I quote from a 5th Circuit case that quotes from the House report which is the key piece. No. They were two different statutes. Right? They originally were two different statutes. 1202 and 922G. Right. And there's a statutory definition of the term interstate or foreign commerce in one of the statutes. And that term, when the statutes were merged, that term was not added to the clause we're talking about. The clause we're talking about doesn't use the statutorily defined term. I submit it does.  Possess in or effecting commerce. That's in 922G1. My position is the definitions of commerce, definition of commerce including a succession in 921A2. That's not a definition of commerce. That's a definition of interstate or foreign commerce. Right. But using... And that phrase is not used in 922G1 possess in or effecting commerce. Using principles... Do you agree with that? I disagree with that. I agree with you. So you think the words possess in or effecting commerce also use the words interstate or foreign commerce? No. But using principles of statutory interpretation, the definition in 921 of interstate and foreign commerce, which is a unitary concept, has to be read to interpret the term commerce. What is the principle of statutory interpretation that says we use a statutorily defined term, we use that definition when the statutorily defined term is not used? Well, it is used because the case law... They were different statutes. The other... Where this came from, possess in or effecting commerce, there's case law about that. The Supreme Court has opined on what that means. They've said it goes to the limits of the Constitution. It's meant to include everything. And under that original, where it came from, it was specifically defined to include commerce within one state that passes through another state. And that old soil comes with it as it goes over into the new statute, where they don't amend it to include the definition that you want us to add. So the only way to view the term commerce in 922G1 is to view it the way that it has been talked about for 200 years, which is interstate or foreign commerce. And when Congress defines interstate or foreign commerce to include a specific kind of thing with an exception... Congress is using a term of art here in an effecting commerce. And the in an effecting commerce modifies possession. And it has been said too many times to mention that when Congress uses this term of art, it extends, it means to extend its jurisdictional powers to its fullest extent. And it would seem a classic case of a possession of a weapon, of a gun that has been in interstate commerce. This is a garden variety 922G claim as far as the jurisdictional element is concerned. If something goes through, goes from North Carolina to Louisiana, then to Georgia or wherever, and then back to North Carolina, that gun has moved in interstate commerce and it's possessed by a felon. You're talking about the constitutional interpretation under the Commerce Clause. I'm talking about a specific statutory definition that defines an element. The words in an effecting commerce are part of the specific statutory definition and all of this little trip that this weapon took through these different states all took place prior to the possession of the weapon. And the felon possessed the weapon and prior, the weapon had moved in interstate commerce and you might have a different case if a truck was going down an interstate in North Carolina and part of the interstate went five or six miles, went into South Carolina and then the truck got back on the interstate in North Carolina and that was where the possession occurred. Okay, we had to listen to that, but that's not this case. This is a well-traveled weapon. It has been all over the place. It's been to wholesalers, it's been to retailers. If that ain't moving in interstate commerce, then I don't know what is. Your Honor, I am focused on the plain language of 921A2 that says what's not interstate or foreign commerce is when something moves, quote, between places within the same state but through any place outside of that state. That's very broad language. That does not talk about it moves briefly into South Carolina and comes back into North Carolina. This was a continuous- Well, it doesn't, I mean, first we have a problem that the statutory definition you're using is not the words in the statute that we're supposed to be interpreting, right? You're using a definition of a different term, but then also, it doesn't say moving between places. It says commerce between any place in a state and a place outside of that state, but it excludes commerce between places within the same state but through any place outside of it. So, it would seem that that would apply to a transaction that one end and the other end of the transaction are both within the state, but as Judge Wilkinson points out, it makes a little trip outside on its way. There's nothing about making a little trip in this language. It's very broad. I would note the only court to have interpreted this, it was a gun that went outside of the three-mile limit in the Atlantic Ocean that belonged to Florida and goes 15 miles out and later comes back in. Might be deemed a little trip compared to what this weapon took, but there's no way to limit that. There are attacks on all these gun laws, Second Amendment attacks, this kind of attack, and of the 922 series, 922G is the most important. It is the linchpin, and your claim seeks to dismember, and it would have far-reaching implications on the provision in the 922G series, which is probably its most important. And that's okay if you want to bring that kind of claim, but the problem is it's in the face of a congressional term in an effect in commerce where Congress wished to extend its jurisdictional authority to the fullest. And I can't imagine how this would seem as a matter of statutory interpretation if we were to say, oh, well, something that's been in North Carolina and then went to Georgia and then went to Louisiana and everything. It never moved in interstate commerce. I mean, that ain't gonna pass a straight face to us. Yes, it did move in interstate commerce. Your Honor, we're talking two different languages. You're talking constitutional commerce clause language. I'm talking statutory language. Can I ask you about statutory interpretation? Do you agree that there is a principle, statutory interpretation, that when Congress uses a term in one place but not in another place, it uses different language, we are supposed to look at that with the assumption that Congress meant different things. Inclusio unius, exclusio auterius, which there's another one. And Latin is so great. In paramateria. Right, so when Congress uses a term in one place but not in the other place, that's supposed to mean something. Well, there are two competing statutory interpretation principles. Do you agree with that? If that were being viewed in isolation, I would, but there's a competing one, which is in paramateria. We also have legislative history. But in paramateria doesn't mean we read Congress to say something it doesn't say. So in the statute, it says, it's unlawful for felons to ship or transport in interstate or foreign commerce. It's also illegal to receive any firearm or munition that has been shipped or transported in interstate or foreign commerce. But it's illegal to possess inter-affecting commerce. They didn't use interstate or foreign commerce, the defined term there. And the Supreme Court tells me that's supposed to mean something. Well, there is no other commerce. Do you agree with that? I disagree with your interpretation of the- You think I should read all of them to say the same thing, even though Congress made them say different things? I do, and I do because there is no such thing as non-interstate or foreign commerce that's commerce- Sure there is. We're arguing about the very thing that is commerce, but is not the statutorily defined interstate or foreign commerce. It can be commerce, even though it comes back to the same state, right? It passed through another state. We're arguing about the exception, right? You're pinning everything on the definitional exception.  That exception doesn't apply to the constitutional limits of inter-affecting commerce. We know that because the Supreme Court has told us it just has to have any touch with interstate commerce. Really quickly, this is a one-off case. You made the comment, Judge Wilkinson, that this was going to- Sure, you can answer Judge Rushing's question. Sure. I take the position that using established principles of statutory interpretation in paramateria and the legislative history, which supports what I'm saying, that Congress intended all this to be one unitary concept, interstate and foreign commerce. And the fact they didn't put the terms interstate and foreign before the term commerce at the end of 922G1 doesn't change anything. To the contrary, doesn't the legislative history seem to suggest it was very purposeful not to add that term here because they were taking the possession statute from a different place in the code and they wanted to take all of the law that surrounded that place in the code and move it here when they consolidated it, right? The history suggests it was very intentional to leave this definitional term out. I don't read the legislative history that way. I think this was a relatively quickly done thing in 1968 that took some things and didn't take other things, but what they did clearly do was add the word not in the definition in 921A2 that did not exist in the predecessor statute section 1202. To define interstate or foreign commerce. Correct, which I contend has to be read to define the term commerce in 922G. Let me quickly say, this is not going to have a huge implications for other cases. This is a one-off. I have found no other case where a person possesses a gun manufactured within their state that made a commercial trip to the wholesaler and the retailer's warehouse and then back to a retailer in the state. That's probably never happened other than this case and it'll probably never happen again. Thank you, counsel. Thank you. Ms. Greenaw. May it please the court. Elizabeth Greenaw on behalf of the United States. This court should affirm the district court's denial of Mr. Irvin's 2255 motion to vacate his felon in possession of a firearms conviction. I think you've hit on the main point here and my opponent has agreed that if we find, if you find that the language. Is this claim even properly before us or has it been forfeited? So, I don't think it's properly before the court, no. And when he's talking about the relation back to his original motion to vacate, one, I don't think he made the claim for that. Was it raised in the sentencing? Was it raised in the guilty plea hearing? Was it raised on direct appeal? Was it? No. I don't even know if it was raised before the district court. But is this claim, is the claim forfeited as a procedural matter? I believe it is, your honor. Do you think his ineffective assistance is forfeited? Not the ineffective assistance. I'm sorry, the guilty plea claim.  No, I don't. Well, they both rely on the guilty plea, right? We're talking about the statute because it goes to prejudice and whether he would have had any reason not to plead guilty. Right. Whether as to the IAC claim or to this due process claim.  And they're given, I'm so sorry, but I mean, we wouldn't be here but for this false ATF report, you know, putting to one side the legal question of whether it's egregious misconduct that would allow for withdrawal of a plea. Just what happened? How did ATF get this so wrong? So it's not in the record. I can probably answer your question if you'd like me to. I would be encouraged if I thought this was a one, we're talking about a one-off, that this was a one-off blunder that will not recur. Yes, this is the only time I've heard of this. My understanding, it was, the research was based, it was based on prior research the agent had done. And this was a relatively new gun manufacturing plant in North Carolina. So I think this was a very limited situation. It's unfortunate. But at the end of the day, Irvin received, by pleading guilty, he received a three-level reduction in his acceptance of responsibility, which reduced his applicable guidelines range by six years. So there would have been no reason for him to go to trial to argue that his conduct after this semi-automatic weapon moved to Louisiana and then to Georgia and back to North Carolina, that that didn't affect interstate commerce, that it was not in or affecting commerce under the statute. And I do believe that the clear language, the plain language of the text of the statute controls here. I do want to mention one thing with respect to the legislative history. When this statute was originally enacted in 1202, there was a definition there of commerce, not of interstate commerce, but of commerce. And that included travel between points within a state through another state, so, through another area. So I do think that, and it's the, I believe the Fifth Circuit case, where... I mean, even if we get to the guilty plea, to the fact that this is cognizable, for the life of me, I can't see the actual innocence that's necessary to prove prejudice or that's necessary to make the claim fly. I may be very simplistic, but to me, Louisiana and Georgia and North Carolina are different states. Last time I checked the atlas. And the gun went through all three of them. And it... The idea that Congress might not have meant to cover this, when it used the phrase in commerce, which extends its jurisdictional authority, it all took place before the possession. The timing of it is significant. It took place before the possession took place. He was lucky, I mean, and this doesn't pertain to what I think is a relatively simple application of 922G, but people sometimes seem to withdraw guilty pleas out of a sense of buyer's remorse or whatever. And it is an oddity to this, that we are talking about ineffective assistance of counsel when you look even at the performance problem under Strickland v. Washington. I realize it doesn't touch the jurisdictional question, but it's just one of those ironies about where we are these days, that this lawyer, as far as I can tell, did one heck of a good job. He reduced the guidelines range by six years. He got a reduction, offense level reduction for acceptance of responsibility. He served his client or she served her client well, and yet we're up here on an ineffective assistance of counsel claim with an actual innocence claim that's supposed to prove prejudice from what was the effective representation of counsel. And in the face of travel, if you, if a family goes on a vacation and they go around state lines, they went to Georgia and Louisiana and said, somebody asked when they come back, they come back to the place that they left for vacation, and said, oh, how was your trip? Did you travel interstate? They would look at you as if you were crazy. Of course, we got in the family car, we went down to Georgia, we went down to Louisiana. I mean, the answer would be to that family that came back to the place from where they started their vacation, yeah, well, of course, what do you mean did we go interstate? We crossed the state lines, went from one to another, that's, you know, that's the itinerary that the gun pursued. And so, it's just odd, you know, I come back, I realize the question can be said, he'd prove innocence, and he's saying jurisdictionally, I'm innocent, and everything, but, you know, still, there is an oddity here that a lawyer who did a good job for the client, and as a guilty plea, as far as I can tell, it was voluntary and intelligent, he was represented by counsel, and all the rest, and he's asking to withdraw it, and I don't get it. Well, I guess I sort of get it, I think the concern, right, is that, well, I guess I should maybe ask it this way, is the government's position that a lawyer should just be able to rely on an ATF report, I mean, that would be the concern, right, that the lawyer should have checked the ATF report, found out it was false, and then might have done further research indicating that it didn't really matter that it was false, because the jurisdictional nexus was otherwise satisfied, but I think the defendant's concern here is, as far as I can tell, my lawyer just took the government's word for the fact that an essential element of the offense was satisfied. Right. And I do think it would fall within the wide range of reasonable professional assistance for an attorney to rely on an ATF report that's provided by the government. I know, but then that makes it so much worse that this one was false. But the fact that it's extraordinarily rare, I think . . .  I mean, as I said, this is the only one I've heard of, but I do think that, you know, there's no evidence here that there was anything egregiously wrong, that anyone was out to get this defendant that they wanted to deliberately create a report or something, so if there's some concern that there's a target of an individual, then you have . . . I'm thinking of it more in terms of ineffective assistance, and just wondering, like maybe in a state where there is a manufacturer of guns, if you get the ATF report that says this gun was not manufactured in North Carolina, that's the one thing we know, like maybe a defense lawyer should check that, like do a Google search, put in the manufacturer of the gun and see if they're in North Carolina. I'm anxious about the combination of your instinct, which I share, that look, a lawyer, a defense lawyer ought to be able to rely on an ATF report about where a gun was manufactured and the fact that in this case, that would have been incorrect. Right. So, I mean, the issue I guess is that you have to have an effective . . . have counsel who is effective, and the question is whether or not it would have been reasonable for the attorney to take that at its face value or whether they have to investigate it, and that's something . . . that would be more of a factual issue, I guess, to decide, but I think we assume that attorneys, the presumption is that they act within their discretion, and we presume that they're acting accordingly, so . . . Was there . . . did you make an argument about effective . . . the effectiveness prong on appeal? I didn't think the effectiveness prong was being debated. So the deficiency prong. Sorry. The deficiency prong. Yeah. Right. I did not actually . . . It's just the prejudice prong that's being debated. Right. I think the prejudice prong is very, very strong, and I think, as you're pointing out, Judge Harris, there may be more issues that might be something you would want to get more evidence on, but . . . I don't know if you updated the information about North Carolina once they realized, oh, there is a new manufacturing facility. We're going to stop. We're going to start checking for this.  I'm sure they're double-checking.  So, yes, I think the prejudice prong is very strong. I do think, like I said, that it would have fallen within the wide range of reasonable professional assistance. I do understand your concern there, but I do think that that's where you bring your ineffective assistance claim, and if there's something to it, then the court can correct it. But here, if the attorney . . . and we don't know what the attorney did, but if he had investigated it, he would have discovered it moved in interstate commerce. So at the end of the day, his advice to the defendant should have been the same. There's no viable defense here, so you're better off pleading guilty and getting that six-year reduction for acceptance of responsibility. And his attorney noted at sentencing, too, that . . . well, he called it having super acceptance of responsibility, but said he wanted to plead guilty to get home quickly to his family. So there were considerations that were taken into account there with the plea. If there are no further questions, I'm happy to ask the court to affirm the district court's judgment. Judge Harris, do you have further questions? Thank you very much. Thank you. Mr. Newton. We have some rebuttal time, sir. Thank you. Your Honor, you . . . Judge Wilkinson, you made the comment about what if you were to travel out of state on vacation, and you come home, and your friends say, well, how was your interstate trip, and of course they've traveled interstate, right? I'm not saying in the common parlance a person wouldn't travel interstate, and I'm not saying Congress wouldn't have the constitutional authority in that case to regulate that. The real question to ask that couple would be, did you enjoy your trip that traveled between places within the same state, but through any place outside of that state? And if that language includes leaving the state that you begin in in one place and making a commercial trip through however many states, but with coming back to that state, that is arguably within the language, the plain language of that provision. Again, this is novel. I'm not saying it's not novel, because it's such a weird fact pattern. I was an assistant federal public defender for thirteen years. I handled several dozens of these 922G cases. You're right, they're a staple of federal prosecution. I will tell you what I always did, even if it just took me five minutes, was verify . . . Were you hearing a little vouching here? Yeah. Well, just to verify where the gun was made. That's just . . . I would also check to see if my client was a felon, because sometimes they weren't. They were a misdemeanor or whatever. This was deficient performance. The question is, was it prejudicial? And whether it's prejudicial is going to turn on whether you agree that my statutory interpretation is correct. If you disagree with it, then I lose. If it is an arguable statutory interpretation, I believe it's more than arguable, using the tools of statutory interpretation. There are two kinds of commerce. There's the kind of commerce Congress can regulate, and there's the kind of commerce Congress cannot regulate. Intrastate . . . Look, if this gun had never traveled outside of North Carolina and he had possessed it, this would not be a federal prosecution. It would be a state prosecution, but not a federal prosecution. The intrastate is not something that falls within 922G. It has to be interaffecting commerce, and that definition of commerce is intrastate or foreign commerce. It is a very reasonable interpretation of 921A2 to read the definition of intrastate and foreign commerce as imperimeteria of commerce in 922G1. If I am correct . . . You're adding terms, aren't you now? No. The terms intrastate and foreign are built into the word commerce in 922G1. So by saying they're built in, you're saying they're not there. They're implicit. Right. Implicit means not there, not explicit, not on the page, not written in black and white. No, but there are countless Supreme Court of the United States decisions that in interpreting statutes will read words as implicit under the context of the statute. This is implicit in the context of that. I mean, that would be a no-no at the Supreme Court. I disagree. I know you disagree, but I'm saying you seem allergic to the phrase in or affecting commerce. I've listened carefully to your argument, and you seem to be shying away from the use of that phrase or its import throughout. And then we ask why, and you say, well, it's implicit in the context of the statute. Are we supposed to overrule an explicit expression for implicit context? Because that was your response. Judge, I'm not shying away. I am acknowledging that as a matter of constitutional law, that the gun traveled in interstate commerce. I am making a very specific argument based on the language of the statute and ... So now we're going to issue, now we're going to have a big constitutional issue, huh? No, I'm not making ... I thought you just said so. No, I'm saying I'm not disputing the constitutional implications of the guns travel. I'm arguing under 921A2, the definition, which I contend, and under established principles of statutory interpretation, which ... I mean, Scarborough, you're talking about constitutional principles. Scarborough was interpreting in or affecting commerce. It was interpreting 1202. Yeah, in or affecting commerce, the exact words we are talking about here. The definition that I'm talking about didn't exist in 1202. Right, because it's a definition for a different term. But the term in or affecting commerce is exactly what the Supreme Court was talking about in Scarborough, right? And they said it goes to the bounds of the Constitution. They talked about it as a matter of constitutional law. They had no reason to interpret 921A2 because it didn't exist in that statute. Yeah, and because it's different words. All right. All right. Thank you. Hold on. Judge? Thank you. Mr. Newton, I would like to thank you on behalf of the court. I see that you're court appointed, and I think you presented a fine argument, and I'd just like to express the appreciation of all three of us for your services. We'll adjourn court and come down and greet counsel. Thanks to our courtroom deputy as well. You've made things run very smoothly. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court. Thank you.
judges: J. Harvie Wilkinson III, Pamela A. Harris, Allison J. Rushing